1  Nathan Siegel (*admitted pro hac vice*)
2  Rachel Strom (*admitted pro hac vice*)
   Kelly M. Gorton (Bar No. 300978)
3  **DAVIS WRIGHT TREMAINE LLP**
   505 Montgomery Street, Suite 800
4  San Francisco, California  94111
   Telephone: (415) 276-6500
5  Facsimile:  (415) 276-6599
   nathansiegel@dwt.com
6  rachelstrom@dwt.com
   kellygorton@dwt.com
7
   *Attorneys for Defendant Fox Broadcasting Company*
8

9            **IN THE UNITED STATES DISTRICT COURT**

10          **THE NORTHERN DISTRICT OF CALIFORNIA**

11                    **OAKLAND DIVISION**

12 MUHAMMAD ALI ENTERPRISES LLC,          Case No. **4:17-cv-06949-DMR**

13              Plaintiff,                 **NOTICE OF MOTION AND SPECIAL
                                           MOTION TO STRIKE PLAINTIFF'S**
14      v.                                 **COMPLAINT (C.C.P. § 425.16)**

15 FOX BROADCASTING COMPANY,              Hon. Donna R. Ryu
                                          Hearing Date: March 22, 2018
16              Defendant.                Time: 11:00 am
                                          Courtroom: 4
17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

TO PLAINTIFF MUHAMMAD ALI ENTERPRISES LLC:

PLEASE TAKE NOTICE that on March 22, 2018 at 11:00 am, or as soon thereafter as counsel may be heard in the Courtroom 4 of the Honorable Donna M. Ryu, located at 1301 Clay Street, Oakland, CA 94612, Defendant Fox Broadcasting Company ("Fox") will and hereby does move this Court, pursuant to California Civil Procedure Code Section 425.16, for an order striking Count II of the Complaint of Plaintiff Muhammad Ali Enterprises LLC ("MAE") and awarding Defendant its reasonable attorneys' fees and costs.

This Motion, supported by the memorandum of points and authorities and the concurrently filed Request for Judicial Notice with Exhibits A through K and the Declaration of Bill Richards, is made on the grounds that Plaintiff's action falls squarely within the scope of Code of Civil Procedure subsection 425.16(b)(1).  Applying the choice-of-law rules of the state from which this case was transferred, Illinois, the California anti-SLAPP statute applies to the single state-law claim alleged in the Complaint, for the violation of Plaintiff's right of publicity.

Plaintiff's action falls within the scope of Section 425.16(b)(1) because it arises from a segment broadcast as part of Fox's pre-game and post-game coverage of the Super Bowl on February 5, 2017.  The segment paid tribute to the life and legacy of Muhammad Ali, who passed away in 2016, by surveying his achievements from the 1960s to the 1990s and then relating his accomplishments to those of Super Bowl athletes beginning in the 1960s as well.  The segment therefore involved a matter of public interest.  Consequently, the burden shifts to Plaintiff to establish a probability that it will prevail on its claims.  *See* Cal. Civ. Proc. Code § 425.16(b)(1).

Plaintiff cannot meet this burden.  Specifically:

1.      Count II, which asserts a claim for violation of the Illinois Right of Publicity Act ("IRPA"), fails to state a claim because several provisions of the IRPA specifically exempt the segment at issue in this case:

a.      The segment is a "news, public affairs, or sports broadcast" and is thus exempted from the scope of the IRPA by 765 ILCS 1075-35(b)(2).

b.      The segment was broadcast to "to portray . . . that individual [Muhammad Ali] in … television," and it "does not constitute in and of itself a commercial advertisement for a

DAVIS WRIGHT TREMAINE LLP

product, merchandise, goods, or services." It is therefore also exempted from the scope of the IRPA by 765 ILCS 1075-35(b)(1).

   c. Even if the segment was, as MAE implausibly asserts, an "advertisement" for the Super Bowl broadcast, it would still be protected by 765 ILCS 1075-35(b)(4), which exempts advertisements for sports broadcasts. *Id.*

  2. Alternatively, if California law is applied to Count II, then Cal. Civ. Code § 3344.1 governs Plaintiff's claim because that statute provides the sole basis for asserting a claim for violation of a deceased person's right of publicity under California law. Count II fails to state a claim because several provisions of that statute likewise specifically exempt the segment:

   a. The segment is an "audiovisual work," a "television program," and a "work of … newsworthy value," that is "fictional or nonfictional entertainment." It is therefore exempted from the scope of the statute by Cal. Civ. Code § 3344.1(a)(2). Moreover, even if the segment was, as MAE unconceivably asserts, an "advertisement" for the Super Bowl broadcast, it would still be protected by the same statutory provision, which also exempts advertisements for television programs. *Id.*

   b. The segment was broadcast "in connection with any news, public affairs, or sports broadcast or account," and therefore is also exempted by Cal. Civ. Code § 3344.1(j).

   c. Plaintiff's claim for damages is independently barred because Section 3344.1 also requires that any claim to a deceased personality's rights be registered at the time of the alleged infringement in order to have standing to sue for damages. Cal. Civ. Code §3344.1(f)(1). MAE registered its claim to Muhammad Ali's publicity rights on October 20, 2017, eight months after Fox's Super Bowl broadcast, so MAE lacks standing to sue for damages.

  3. Count II is also barred by the First Amendment, because the segment is an expressive work about a matter of public interest.

  4. Count II is also preempted by the federal Copyright Act, 17 U.S.C. § 301.

2

DAVIS WRIGHT TREMAINE LLP

DATED this 16th day of January, 2018

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:   */s/ Nathan Siegel*
        Nathan E. Siegel

Attorneys for Fox Broadcasting Company

DEFENDANT'S SPECIAL MOTION TO STRIKE
Case No. 4:17-cv-06949-DMR

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................... 1

II.    STATEMENT OF FACTS ....................................................................................... 2

       A.     The Parties ................................................................................................ 2

       B.     MAE's History of Looking to California to Assert Ali's Rights ................ 3

III.   ARGUMENT ........................................................................................................... 3

       A.     California Law Applies to Count II With Respect to Any Issue in Which a
              Choice of Law May Be Required ............................................................... 4

              1.     California's Anti-SLAPP Statute Governs Count II of the
                     Complaint ....................................................................................... 4

              2.     California Law Would Also Govern the Merits of Count II if any
                     Choice of Law Were to Be Made Regarding the Merits ................ 6

       B.     Count II Fails to State a Claim and Should Therefore Be Struck Pursuant
              to the Anti-Slapp  Statute .......................................................................... 9

              1.     The Segment Easily Satisfies the First Prong of the Anti-SLAPP
                     Statute ........................................................................................... 10

              2.     Count II Must Be Dismissed for Failure to State a Claim As a
                     Matter of Law ............................................................................... 11

                     a.     Count II Fails to State a Claim Under Illinois Law .......... 11

                     b.     Count II Also Fails to State a Claim Under California Law ........... 11

              3.     Cal. Civ. Code § 3344.1(a)(2) Exempts the Segment ................. 12

              4.     Cal. Civ. Code § 3344.1(j) Also Exempts the Segment ............. 12

              5.     Count II's Claim for Damages Must Also Be Struck Because MAE
                     Failed to Timely Register Ali's Alleged Publicity Rights ........... 13

              6.     The First Amendment and the Copyright Act Also Bar Count II ............... 14

IV.    CONCLUSION ..................................................................................................... 14

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acme Circus Operating Co., Inc. v. Kuperstock*,
    711 F.2d 1538 (11th Cir. 1983)..................................................................................7, 8

*Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc.*,
    448 F. Supp. 2d 1172 (C.D. Cal. 2006)........................................................................11

*Chi v. Loyola Univ. Med. Ctr.*,
    787 F. Supp. 2d 797 (N.D. Ill. 2011) .........................................................................4, 5

*Chuy v. Phila. Eagles Football Club*,
    431 F. Supp. 254 (E.D. Pa. 1977), *aff'd*, 595 F.2d 1265 (3d Cir. 1979) (en banc)...................10

*Curtis Publ'n Co. v. Butts*,
    388 U.S. 130 (1967) (plurality opinion).........................................................................10

*Davis v. Electronic Arts Inc.*,
    775 F.3d 1172 (9th Cir. 2015)........................................................................................10

*Doe v. Gangland Prods.*,
    730 F.3d 946 (9th Cir. 2013)..........................................................................................10

*Dora v. Frontline Video, Inc.*,
    18 Cal. Rptr. 2d 790 (Cal. App. 2d Dist. 1993) .........................................................13

*Duffy v. Godfread*,
    No. 13-cv-1569, 2013 WL 4401390 (N.D. Ill. Aug. 14, 2013) ..................................5

*Eagle Forum v. Phyllis Schlafly's American Eagles*,
    No. 3:16-cv-946, 2017 WL 4785792 (S.D. Ill. Oct. 20, 2017) ..................................8

*Estate of Fuller v. Maxfield & Oberton Holdings, LLC*,
    906 F. Supp. 2d 997 (N.D. Cal. 2012) ...................................................................11, 12

*Experience Hendrix, LLC v. HendrixLicensing.com, LTD*,
    766 F. Supp. 2d 1122 (W.D. Wash. 2011)....................................................................7

*Factors Etc., Inc. v. Pro Arts, Inc.*,
    652 F.2d 278 (2d Cir. 1981)............................................................................................7

*Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*,
    No. 2:05-CV-01059, 2006 WL 1687451 (D. Nev. June 16, 2006)..............................7

*Fresno Rock Taco, LLC v. National Surety Corp.*,
    2014 WL 4374228 (E.D.Cal., Sept. 3, 2014) ...............................................................2

DAVIS WRIGHT TREMAINE LLP

*Global Relief Found. v. New York Times Co.*,
    No. 01-C-8821, 2002 WL 31045394 (N.D. Ill. 2002) ....................................5

*Guglielmi. Comedy III Prods., Inc. v. Gary Saderap, Inc.*,
    25 Cal. 4th 387 (2001) ..............................................................................13

*Guglielmi v. Spelling-Goldberg Prods.*,
    25 Cal. 3d 860 (1980) ............................................................................12, 13

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ...................................................................10

*In re Bah*,
    321 B.R. 41 (B.A.P. 9th Cir. 2005) ...........................................................11

*In re Estate of Reynolds*,
    327 P.3d 213 (Az. Ct. App. 2014) ..............................................................7

*In re NCAA Student-Athlete Name & Likeness Litig.*,
    724 F.3d 1268 (9th Cir. 2013) .................................................................10

*Intercon Solutions, Inc. v. Basel Action Network*,
    969 F. Supp. 2d 1026 (N.D. Ill. 2013) ....................................................4, 5

*Kamelgard v. Macura*,
    585 F.3d 334 (7th Cir. 2009) .....................................................................6

*Miller v. Long-Airdox Co.*,
    914 F.2d 976 (7th Cir. 1990) .....................................................................8

*Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc.*,
    935 F. Supp. 490 (S.D.N.Y. 1996) ...........................................................10

*Montana v. San Jose Mercury News, Inc.*,
    34 Cal. App. 4th 790 (1995) .................................................................10, 13

*Moore v. Univ. of Notre Dame*,
    968 F. Supp. 1330 (N.D. Ind. 1997) ........................................................10

*Muhammad Ali Enterprises LLC v. v. Kobo, Inc.*,
    Case No. 11-CV-4825, Dkt. No. 1 ...............................................................3

*Muldoon v. Tropitone Furniture Co.*,
    1 F.3d 964 (9th Cir. 1993) ..........................................................................4

*New Kids on the Block v. News Am. Publ'g, Inc.*,
    971 F.2d 302 (9th Cir. 1992) ....................................................................13

*Nygard, Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027 (2008) .................................................................10

DEFENDANT'S SPECIAL MOTION TO STRIKE
Case No. 4:17-cv-06949-DMR

*Rosa & Raymond Parks Inst. for Self Dev. v. Target Corp.*,
    812 F.3d 824 (11th Cir. 2016) ................................................................................9

*Sandholm v. Kuecker*,
    962 N.E.2d 418 (Ill. 2012) .....................................................................................5

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ..............................................................6, 8, 9, 13

*Seelig v. Infinity Broad. Corp.*,
    97 Cal. App. 4th 798 (2002) .................................................................................10

*Tanner v. Jupiter Realty Corp.*,
    433 F.3d 913 (7th Cir. 2006) .................................................................................8

*Townsend v. Sears, Roebuck & Co.*,
    879 N.E.2d 893 (Ill. 2007) .....................................................................................4

*Underground Solutions, Inc. v. Palermo*,
    41 F. Supp. 3d 720 (N.D. Ill. 2014) ..................................................................4, 5

*Underground Solutions, Inc. v. Palermo*,
    No. 13 C 8407, 2014 WL 4703925 (N.D. Ill. Sept. 22, 2014) ............................9

**Statutes**

765 ILCS 1765/15-25 .....................................................................................................7

17 U.S.C. § 301 ..............................................................................................................2

California Civil Code
    § 3344(d) ..............................................................................................................13
    § 3344.1 ..........................................................................................................*passim*
    § 3344.1(a)(2) .......................................................................................................12
    § 3344.1(f)(1) .......................................................................................................14
    § 3344.1(f)(2) ...................................................................................................3, 14
    § 3344.1(j) ............................................................................................................12

California Code of Civil Procedure
    § 425.16 ..................................................................................................................1
    § 425.16(a) .............................................................................................................9
    § 425.16(b)(1) ........................................................................................................9
    § 425.16(c)(1) ........................................................................................................2

Copyright Act ..................................................................................................................2

Illinois Right of Publicity Act .......................................................................................11

Lanham Act ......................................................................................................................3

DAVIS WRIGHT TREMAINE LLP

**Rules**

Federal Rules of Civil Procedure

8 ...................................................................................................................11
12 .................................................................................................................11
12(c) ................................................................................................1, 2, 11, 14

**Constitutional Provisions**

First Amendment ......................................................................................1, 2, 13, 14

DAVIS WRIGHT TREMAINE LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT'S SPECIAL MOTION TO STRIKE
Case No. 4:17-cv-06949-DMR

**STATEMENT OF ISSUES TO BE DECIDED**

1.     Whether Fox is entitled to invoke the California anti-SLAPP statute under Illinois' choice of law rules.

2.     Whether Fox has satisfied the first prong of the anti-SLAPP statute because the segment at issue, as well as the Super Bowl broadcast within which it appears, involve matters of public interest.

3.     Whether Plaintiff cannot demonstrate a probability of prevailing on the merits because:

        a.     Count II fails to state a claim under Illinois, or alternatively California law.

        b.     Count II is barred by the First Amendment, and/or

        c.     Count II is preempted by federal copyright law.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

California's anti-SLAPP statute was passed to address "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech."  Cal. Civ. Proc. Code § 425.16.  Plaintiff Muhammad Ali Enterprises LLC ("MAE")'s right of publicity claim in this case asserts a broad right to control how a television network like Defendant Fox Broadcasting Company ("Fox") may introduce and cover an event of enormous public interest like the Super Bowl.  MAE's publicity rights claim is therefore subject to the anti-SLAPP statute, and it must be stricken because it fails to state a claim as a matter of state and federal law.

While Count II of the Complaint purports to plead a right of publicity claim under Illinois law, that state has no meaningful connection to this case at all.  Therefore, under the choice-of-law rules applicable to this case, Fox is entitled to invoke California's anti-SLAPP statute to seek dismissal of Count II.  However, in the event that the Court disagrees that the California anti-SLAPP applies, Fox has also sought dismissal of Count II in its Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c), filed simultaneously with this motion.  In the alternative, Count II should be dismissed on that basis.

As discussed herein, the substantive grounds for dismissing the right of publicity claim are

DAVIS WRIGHT TREMAINE LLP

the same under both Rule 12(c) and this anti-SLAPP motion.[1]  Count II fails to state a claim as a matter of law, pursuant to either Illinois or California law.  It is also barred by the First Amendment, and preempted by the federal Copyright Act, 17 U.S.C. § 301.  The main difference between this anti-SLAPP motion and Fox's companion Rule 12(c) motion with respect to Count II is that the anti-SLAPP statute also includes the right to seek reasonable attorneys' fees and costs if this motion is granted.  Cal. Civ. Proc. Code § 425.16(c)(1).

## II.   STATEMENT OF FACTS

All of the facts and allegations pertinent to addressing the merits of this anti-SLAPP motion are also contained in the Statement of Facts provided in Fox's Memorandum of Law in Support of Its Motion for Judgment on the Pleadings, and are incorporated herein by reference. The additional facts set forth here are provided solely for purposes of assessing any choice-of-law issues pertinent to this anti-SLAPP motion, in the event that there is any disagreement between the parties regarding the applicable state law that applies to Count II.

### A.   The Parties

Plaintiff MAE is a limited liability company that has been organized in California since 2006, with its office in New York.  Request for Judicial Notice ("RJN") Exs. E, H.[2]  MAE claims to "own[ ] the trademark rights, copyrights, right of publicity, and all other intellectual property rights" of the late Muhammad Ali.  (Compl. ¶ 1.)  Fox is a television broadcasting company that is incorporated in Delaware, with its principal place of business in Los Angeles, California.  RJN Exs. I, J; Richards Decl. ¶ 2.

---

[1] The Court may therefore find it more efficient to review Fox's Rule 12(c) motion first, since it sets forth more fully the facts and legal issues pertinent to this case.  This anti-SLAPP motion will incorporate by reference those facts and arguments the two motions have in common.

[2] A few days before these motions were filed, Fox's counsel noticed that the Secretary of State's website indicates that MAE's status as an LLC is now suspended, perhaps as a result of a failure to timely file updated information forms.  RJN Ex. E.  As a result,  MAE's right to prosecute this lawsuit was suspended starting from the date of suspension.  *Fresno Rock Taco, LLC v. National Surety Corp.*, 2014 WL 4374228 (E.D.Cal., Sept. 3, 2014).  Rather than inject issues into the case which could be easily resolved, Fox's counsel informed Plaintiff's counsel.  As of the date these motions are filed, it is Fox's counsel understanding that any filing deficiencies are being corrected. Fox reserves all rights to raise any rights and defenses it may assert related to any suspension of MAE's legal status, as well as the right to object to any actions taken by the MAE while its status was suspended.

DAVIS WRIGHT TREMAINE LLP

1    The video segment that is at issue in this case – entitled "The Greatest" ("The Greatest

2    segment") – was produced for Fox by an independent sports media company called DLP Media

3    Group.  Richards Decl. ¶ 3.  DLP Media Group is located in Los Angeles, and the segment was

4    filmed and created in Los Angeles.  *Id.* ¶¶ 3-4.  Fox's coverage of Super Bowl LI containing the

5    segment was broadcast nationwide, and Fox Sports 1's coverage was likewise transmitted

6    nationwide.  *Id.* ¶ 6.

7        **B.    MAE's History of Looking to California to Assert Ali's Rights**

8        This is not the first time MAE has filed a lawsuit or taken other legal action to try to assert

9    Muhammad Ali's publicity and Lanham Act rights.  Most importantly, shortly after filing this

10   lawsuit purporting to invoke Illinois law, MAE actually took affirmative steps to protect Ali's

11   alleged publicity rights in California.  When a company like MAE wants to assert publicity rights

12   as a successor-in-interest to a deceased person, the applicable California statute provides the

13   option of registering its interest in those rights with the California Secretary of State.  Cal. Civ.

14   Code § 3344.1(f)(2).  MAE registered its claimed interest in Ali's post-mortem rights in California

15   on October 20, 2017 – just nine days after it filed this lawsuit in Illinois.  RJN Ex. A.

16       Moreover, several years ago MAE filed another lawsuit asserting Ali's publicity rights

17   against a defendant that, like Fox, allegedly distributed materials infringing those rights

18   nationwide.  But since MAE, as it described itself in that lawsuit, is a "limited liability company

19   organized and existing under the laws of California with a principal place of business" in New

20   York, it primarily invoked California, or alternatively New York law, to assert the same publicity

21   rights that are allegedly at issue here.  *See Muhammad Ali Enterprises LLC v. v. Kobo, Inc*., Case

22   No. 11-CV-4825, Dkt. No. 1 ¶¶ 1, 9, 58-63 (S.D.N.Y. July 13, 2011) (attached as Ex. D to the

23   RJN.)[3]  By contrast, MAE does not appear to be registered to do business in Illinois at all.

24               **III.    ARGUMENT**

25       This motion first addresses all the choice-of-law issues that are potentially implicated by

26

27   ────────────────

     [3] While the Complaint in the *MAE v. Kobo* case also vaguely purports to invoke the law of any

28   state in which the infringing material was distributed, no choice-of-law regime would permit such
     a pleading.  Since the Complaint asserts actual causes of action under California or New York
     publicity statutes, one of those states' laws would govern.

3

this anti-SLAPP motion, and then turns to why the motion should be granted on the merits.

### A.    California Law Applies to Count II With Respect to Any Issue in Which a Choice of Law May Be Required

Because this case was transferred from the United States District Court for the Northern District of Illinois, the choice-of-law rules of Illinois continue to apply in this case. *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 965-66 (9th Cir. 1993).  Illinois has adopted the "most significant relationship test" found in the *Restatement (Second) of Conflict of Laws*. *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898-902 (Ill. 2007).  Illinois law also provides that "[a] choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Id.* at 898.

Importantly, Illinois follows the principle of *depecage*, "which refers to the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis." *Id.* at 901.  Applying *depecage*, Illinois treats the question of which state's anti-SLAPP law should apply as an issue that is distinct from the question of which state's law should apply to the merits of a claim. *Underground Solutions, Inc. v. Palermo*, 41 F. Supp. 3d 720, 723-24 (N.D. Ill. 2014); *Intercon Solutions, Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1035 (N.D. Ill. 2013); *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 803 (N.D. Ill. 2011).  Therefore, this memorandum first addresses why the California anti-SLAPP statute should apply to this case, and then separately addresses any choice of law concerning the merits of MAE's right of publicity claim.

#### 1.    California's Anti-SLAPP Statute Governs Count II of the Complaint

While Count II of the Complaint purports to invoke Illinois law for the state-law right of publicity claim it pleads, Fox is entitled to invoke California's anti-SLAPP statute for purposes of moving to strike Count II, regardless of whether Illinois or California law is then applied to resolve the merits of Count II.

Here, there are material differences between the California and Illinois anti-SLAPP

DAVIS WRIGHT TREMAINE LLP

statutes, so a choice of law is required on that specific issue.[4]  And where Illinois courts have confronted conflicts between anti-SLAPP statutes, they have frequently applied the anti-SLAPP laws of other states, including California, even where Illinois (or some other state's) law was applied to the substantive claim.  *See, e.g., Global Relief Found. v. New York Times Co.*, No. 01-C-8821, 2002 WL 31045394, at *11 (N.D. Ill. 2002) (though Illinois law applied to defamation claim, defendant could invoke California anti-SLAPP statute); *Underground Solutions,* 41 F. Supp. 3d at 725-26 (applying Tennessee's anti-SLAPP law); *Intercon Solutions,* 969 F. Supp. 2d at 1035-36 (though Illinois law applied to defamation claim, Washington's anti-SLAPP law applied to strike it); *Duffy v. Godfread*, No. 13-cv-1569, 2013 WL 4401390, at *4 (N.D. Ill. Aug. 14, 2013) (though Illinois law applied to defamation claim, Minnesota anti-SLAPP statute applied).

To determine which state's anti-SLAPP law should be applied, Illinois courts uniformly agree that:

> "[T]he place where the allegedly tortious speech took place and the domicile of the speaker are central to the choice-of-law analysis on this issue."  Further, "[a] state has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens, at least when, as in this case, the speech initiated within the state's borders."

*Underground Solutions*, 41 F. Supp. 3d at 723-24 (*quoting Chi*, 787 F. Supp. 2d at 803).  *See also Duffy*, 2013 WL 4401390, at *4 ("States have strong interests in the application of their own anti-SLAPP laws to their own citizens' speech.").

Applying those principles to this case, the California anti-SLAPP statute clearly applies to Fox's speech.  Fox is a company physically based in California; the segment at issue was created in California; and, "California has a great interest in determining how much protection to give California speakers …. " *Global Relief Found.*, 2002 WL 31045394, at *11 (though Illinois law applied to defamation claim, defendant could invoke California anti-SLAPP statute).  Moreover, the choice-of-law analysis here is even easier, given that MAE is incorporated in California and

---

[4] Unlike the California statute, Illinois courts have construed its anti-SLAPP law to apply only to a very narrow class of cases that are filed *solely* in retaliation for the defendant's speech.  If the Complaint even purports to seek damages for a recognized tort, then the Illinois anti-SLAPP statute may not be invoked.  *Sandholm v. Kuecker*, 962 N.E.2d 418 (Ill. 2012).

DAVIS WRIGHT TREMAINE LLP

has registered in this state the very publicity rights that it seeks to enforce in this lawsuit.  Thus, in addition to California's interest in protecting Fox's speech, California also has the most significant interest in ensuring that MAE only attempt to enforce those rights in a manner that is consistent with this state's public policy.

By contrast, the Complaint pleads no facts at all pointing to any relationship Illinois has to this case, beyond the mere fact that because it is part of the United States people there could watch the Super Bowl just as they could in any other state.  That provides no meaningful connection at all.  *See Sarver v. Chartier*, 813 F.3d 891, 899 (9th Cir. 2016); *Kamelgard v. Macura*, 585 F.3d 334, 342-44 (7th Cir. 2009) (declining to apply Illinois law where letter was published nationwide and plaintiff had no connection to Illinois).  Thus, Fox may invoke the California anti-SLAPP statute to move to strike Count II.

> **2.**     **California Law Would Also Govern the Merits of Count II if any Choice of Law Were to Be Made Regarding the Merits**

As noted above, under Illinois' application of *depecage*, applying California's anti-SLAPP statute does not automatically require applying California law to the merits of MAE's right of publicity claim.  Moreover, as also previously discussed, under Illinois choice of law rules a court is only *required* to choose between different states' laws if the choice would make a difference in the outcome.  With respect to the merits of Count II, for the reasons discussed herein, Fox does not believe a choice between Illinois and California law is required, because Count II fails to state a claim under either state's law.  Nonetheless, in the event that this Court disagrees, or elects to make a choice in any event for purposes of simplicity, then California law should be applied to the merits of Count II as well.

Illinois courts have not directly addressed the question of which state's law should apply to a right of publicity claim brought in Illinois asserted on behalf of a deceased person with no connection to Illinois.  However, courts in other states which, like Illinois, follow the principal of *depecage* generally hold that determining what state's law applies to a right of publicity claim asserted on behalf of a deceased person requires a two-step process.  First, a court must decide which state's law applies to the question of whether such rights survive death in the first place.

DEFENDANT'S SPECIAL MOTION TO STRIKE
Case No. 4:17-cv-06949-DMR

DAVIS WRIGHT TREMAINE LLP

Most courts hold that the law of the state where the decedent resided at the time of death should apply to that question.  *See, e.g.*, *Acme Circus Operating Co., Inc. v. Kuperstock*, 711 F.2d 1538, 1541 (11th Cir. 1983) (holding that "the law of the domicile controls to decide" whether a right of publicity survives death); *Experience Hendrix, LLC v. HendrixLicensing.com, LTD*, 766 F. Supp. 2d 1122, 1137 (W.D. Wash. 2011) ("[v]irtually all" courts that have assessed choice-of-law for post-mortem rights of publicity "have applied the law of the domicile to determine whether a right of publicity descended") (collecting cases).  However, in this case no true conflict is presented on that question because all of the states that might have a potential interest in that issue recognize a post-mortem right of publicity.[5]  Moreover, for purpose of these motions only, Fox does not dispute that Muhammad Ali's publicity rights survived his death.

However, courts following the principle of *depecage* also hold that the question of whether a plaintiff's post-mortem right of publicity has been *infringed* is a distinct issue that requires a separate choice-of-law analysis.  *See, e.g., Acme*, 711 F.2d at 1540, 1545 (applying California law to the question of whether decedent's right of publicity survived death, but Florida law to whether that right had been infringed); *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 281 (2d Cir. 1981) (applying Tennessee law to the survival question, but New York law in considering whether infringement of a publicity right had occurred); *Experience Hendrix*, 766 F. Supp. 2d at 1136 ("[S]urvivability and infringement are distinct issues, and . . . under the principle of dépeçage, they may be subject to different choice-of-law decisions."); *Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*, No. 2:05-CV-01059, 2006 WL 1687451 (D. Nev. June 16, 2006) (even if Jamaican law governed the existence of Bob Marley's post-mortem rights, Nevada law applied to their infringement).  In fact, a federal court in Illinois recently held that a dispute over the publicity rights of former political activist Phyllis Schlafly would be governed by Illinois law, even though Ms. Schlafly had been a resident of Missouri when she died and had never lived in Illinois.  The court held that because "Ms. Schlafly's businesses were based in Illinois and had a

---

[5] News reports state that Ali died in Arizona. https://www.nytimes.com/2016/06/04/sports/muhammad-ali-dies.html.  That state, like Illinois and California, recognizes that a right of publicity survives death.  *See In re Estate of Reynolds*, 327 P.3d 213, 217 (Az. Ct. App. 2014).  *See also* Cal. Civ. Code 3344.1; 765 ILCS 1765/15-25.

7

DAVIS WRIGHT TREMAINE LLP

national reach," Illinois law had the most significant relationship and it would apply. *Eagle Forum v. Phyllis Schlafly's American Eagles*, No. 3:16-cv-946, 2017 WL 4785792, at *4 (S.D. Ill. Oct. 20, 2017).

Under Illinois choice-of-law rules, the Court must weigh four factors to determine which state has the "most significant relationship" to the question of what state's law governs the alleged infringement of Muhammad Ali's post-mortem publicity rights. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 916 (7th Cir. 2006). Those are: "(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and, (4) where the relationship of the parties is centered." *Id.* In general, "in a tort case, the two most important contacts are the place where the injury occurred and the place where the conduct causing the injury occurred." *Miller v. Long-Airdox Co.*, 914 F.2d 976, 978 (7th Cir. 1990).

The Ninth Circuit recently provided clear guidance regarding how to apply the "most significant relationship" test to a right of publicity case arising out of a film or television program that was disseminated nationwide. *Sarver*, 813 F.3d 891. Like this case, *Sarver* was transferred to California from a jurisdiction (New Jersey) that applies the *Restatement*'s "most significant relationship" test to choice-of-law disputes. *Id.* at 898. And like this case, *Sarver* involved the nationwide distribution of media content, specifically the motion picture *The Hurt Locker*. *Sarver* held that under those circumstances, California law should apply.

*Sarver* reasoned that because the plaintiff's "alleged injuries would most likely have occurred in numerous states," the place of injury test "will *not* play an important role in the selection of the state of applicable law." *Sarver*, 813 F.3d at 899. Rather, what was most important was that "[t]he conduct causing the alleged injury – the production of *The Hurt Locker* – took place in California." *Id.* at 898. Moreover, the Court emphasized that most of the corporate defendants were either incorporated or "alleged to be conducting business in California." *Id.* And since there was relatively little actual relationship between the parties in *Sarver*, that factor was neutral. *Id.*

*Sarver* clearly points to the application of California law in this case as well. The Greatest segment at issue in this case, like the film in *Sarver*, was produced in California. *See also Acme*,

711 F.2d at 1545-46 (applying Florida law to a claim for post-mortem publicity rights because the allegedly infringing production was in Florida). Moreover, here *all* the parties have strong connections to California – MAE is incorporated here, Fox has its principal place of business here, and MAE has registered Ali's publicity rights here. *See* RJN Exs. I, J, A. *Underground Solutions, Inc. v. Palermo*, No. 13 C 8407, 2014 WL 4703925 (N.D. Ill. Sept. 22, 2014) is also instructive because, like *Sarver*, it applied the *Restatement* principles to a claim involving a multistate publication. The plaintiff business was headquartered in California, but did business nationwide. The court applied California law, holding that the mere fact that the statements at issue were also published in Illinois was not significant. *Id.* at* 3-4. Likewise, the mere fact that the Super Bowl was broadcast to Illinois, as it was to every other state, does not create any significant relationship between this dispute and Illinois.

Finally, the Eleventh Circuit recently found that the law of the state of incorporation of an entity similar to MAE should be applied to a suit asserting the post-mortem publicity rights of the late Rosa Parks. Though the suit was filed in Alabama, the entity asserting her post-mortem rights was "a Michigan 501(c)(3) non-profit corporation," and so the Court applied Michigan law. *Rosa & Raymond Parks Inst. for Self Dev. v. Target Corp.*, 812 F.3d 824, 826 (11th Cir. 2016). Here, California is the only state that has a significant relationship to this dispute, and the factors favoring the application of California law to this case are even stronger than they were in *Sarver*.

Therefore, if this Court were to find that a choice of law should be made with respect to the merits of Count II, it should apply California law.

**B.      Count II Fails to State a Claim and Should Therefore Be Struck Pursuant to the Anti-Slapp Statute**

The anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1). This immunity is "construed broadly." *Id.* § 425.16(a).

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

Applying California's anti-SLAPP law is a two-step process.  First, Fox must make a prima facie showing that its activities are "in furtherance of its right of . . . free speech" in connection with a public issue.  *Doe v. Gangland Prods.*, 730 F.3d 946, 953, 955 (9th Cir. 2013).  Once Fox makes that showing, the court determines whether MAE has a probability of prevailing as that term has been defined by subsequent case law.  *Id.*

**1.    The Segment Easily Satisfies the First Prong of the Anti-SLAPP Statute**

Fox's broadcast of The Greatest segment as part of its Super Bowl coverage easily satisfies the statute's first prong.  Courts "must construe . . . 'issue of public interest' . . . broadly" to include any "topic of widespread, public interest" or "person . . . in the public eye."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 906-907 (9th Cir. 2010).  *See also Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (an issue of public interest "is any issue in which the public is interested.").  As a result, the types of speech that satisfy the statute extend to all aspects of popular culture.  *See, e.g., Hilton*, 599 F.3d at 904 (greeting card depicting photograph of Paris Hilton's head with cartoon character body on a greeting card); *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 807 (2002) (radio show host's criticism of reality show contestant).  In fact, even videogames that simply simulate NFL football games satisfy the first prong of the statute.  *Davis v. Electronic Arts Inc.,* 775 F.3d 1172, 1176 (9th Cir. 2015); *In re NCAA Student-Athlete Name & Likeness Litig.*, 724 F.3d 1268, 1272-73 (9th Cir. 2013).

Certainly, "there can be little doubt that Ali is a figure of legitimate public concern and that [a] television biography [about him] is a subject of public interest."  *Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996).  Similarly, "there can be no question that . . . accounts of [past] Super Bowls . . . constituted publication of matters in the public interest."  *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 794 (1995).  More broadly, it is well-established that media content about sports is a matter of intense public interest.[6]  Thus, Fox's broadcast of The Greatest segment easily satisfies the statute's first prong.

---

[6] *See also Curtis Publ'n Co. v. Butts*, 388 U.S. 130, 154 (1967) (plurality opinion) (football coach a public figure in view of popular interest in the sport); *Moore v. Univ. of Notre Dame*, 968 F. Supp. 1330, 1337 (N.D. Ind. 1997) ("[I]t is this court's opinion that football, and specifically Notre Dame football[,] is a matter of public interest."); *Chuy v. Phila. Eagles Football Club*, 431 F. Supp. 254, 267 (E.D. Pa. 1977) ("[I]nterest in professional football must be deemed an

DAVIS WRIGHT TREMAINE LLP

2.      **Count II Must Be Dismissed for Failure to State a Claim As a Matter of Law**

Since Fox's broadcast qualifies for protection, the Court must determine whether MAE has a probability of prevailing on the merits.  However, that task is simplified here because where "an anti-SLAPP motion to strike is based on the legal deficiencies of the complaint," then "a federal court must decide the motion in a manner that complies with the standards set by Federal Rules 8 and 12." *In re Bah*, 321 B.R. 41, 45 n.6 (B.A.P. 9th Cir. 2005); *Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc.,* 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006).  This anti-SLAPP motion argues that Count II fails to state a claim as a matter of law, for the same reasons that are discussed in Fox's motion for judgment on the pleadings if Illinois law is applied, or for the reasons discussed herein if the Court applies California law.

Moreover, regardless of whether this Court applies Illinois or California law, this anti-SLAPP motion does not rely on any additional materials, not otherwise subject to judicial notice, which are outside the pleadings.  Rather, the only material submitted in connection with this anti-SLAPP motion that is outside the pleadings is a declaration providing basic geographic facts that relate solely to choice of law, if the parties were to disagree about the applicable choice of law. Therefore, if this Court agrees that the California anti-SLAPP statute applies to this case, then the standard that it should apply to the merits of this motion is the same one applicable to Fox's Rule 12(c) motion.

a.      **Count II Fails to State a Claim Under Illinois Law**

Count II pleads a violation of the Illinois Right of Publicity Act.  For the reasons set forth in Fox's Rule 12(c) motion filed simultaneously with this anti-SLAPP motion, and incorporated by reference herein, Count II fails to state a claim under Illinois law.  It should therefore be struck.

b.      **Count II Also Fails to State a Claim Under California Law**

If California law is applied, the result would be the same.  California's right of publicity for a "deceased personality" is governed solely by statute, specifically, Cal. Civ. Code § 3344.1 ("Section 3344.1").  *Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997,

---

important incident among many incidents, of a society founded upon a high regard for free expression."), *aff'd*, 595 F.2d 1265 (3d Cir. 1979) (en banc).

11

1008 (N.D. Cal. 2012). While California's common law also recognizes a right of publicity for living persons, the common law right does not extend to the heirs or assignees of deceased persons. *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 861 (1980) ("we hold that the right of publicity protects against the unauthorized use of one's name, likeness or personality, but that the right is not descendible and expires upon the death of the person so protected."); *Estate of Fuller,* 906 F. Supp. 2d at 1008 ("The California Supreme Court has held that the common law cause of action for misappropriation does not apply to deceased persons.").

Section 3344.1, on its face, clearly precludes MAE's right of publicity claim. The statute broadly exempts both expressive works, and even advertising for expressive works. So, even if The Greatest segment was an advertisement for "Fox's services," which it clearly is not, it would not be actionable under Section 3344.1 because the "services" it allegedly advertises is a television broadcast (of the Super Bowl) that is itself protected by the same statute. Specifically, Section 3344.1 has two exemptions that unambiguously require dismissal of Count II.

### 3. Cal. Civ. Code § 3344.1(a)(2) Exempts the Segment

*First,* the statute provides that:

> For purposes of this subdivision, a play, book, magazine, newspaper, musical composition, audiovisual work, radio or television program, single and original work of art, work of political or newsworthy value, or an advertisement or commercial announcement for any of these works, shall not be considered a product, article of merchandise, good, or service if it is fictional or nonfictional entertainment, or a dramatic, literary, or musical work.

Cal. Civ. Code § 3344.1(a)(2). The Greatest segment is an "audiovisual work," a "television program," as well as a "work of . . . newsworthy value," that is "fictional or nonfictional entertainment." Moreover, even if the segment was, as MAE implausibly asserts, an "advertisement" for the Super Bowl broadcast, it would still be protected because the game broadcast is itself a "television program" that is "nonfictional entertainment." For this reason alone, Fox's motion to strike Count II must be granted.

### 4. Cal. Civ. Code § 3344.1(j) Also Exempts the Segment

*Second*, the statute also exempts any use "in connection with any news, public affairs, or sports broadcast or account." Cal. Civ. Code § 3344.1(j). That exemption was adopted *verbatim*

from California's right of publicity for living persons, Cal. Civ. Code § 3344(d), and it provides *even broader protection* against statutory misappropriation claims than the First Amendment does; in fact, much like the exemptions in Illinois's right of publicity statute, it "is designed to avoid First Amendment questions in the area of misappropriation by providing extra breathing space for the use of a person's name in connection with matters of public interest." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 310 n.10 (9th Cir. 1992). The "public affairs" exemption has been applied broadly – including to a documentary about surfing, *Dora v. Frontline Video, Inc.*, 18 Cal. Rptr. 2d 790 (Cal. App. 2d Dist. 1993), and even to a calendar containing images of Joe Montana winning the Super Bowl that was distributed by a newspaper to attract subscribers. *Montana*, 34 Cal. App. 4th at 795-98. The Greatest segment is far more obviously related to "public affairs," and it is also a "sports broadcast."

Moreover, a majority of the California Supreme Court has held that even if the state were to recognize a post-mortem common-law right of publicity, it would not apply to a film docudrama about the life of a famous person, in that case the actor Rudolph Valentino, because films about the lives of "public and prominent persons," whether fictional or not, are constitutionally protected. *See Sarver*, 813 F.3d at 906 n.9, *citing Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 871 (1979) (Bird, C.J., concurring). Subsequently, the California Supreme Court confirmed that finding in *Guglielmi*. *Comedy III Prods., Inc. v. Gary Saderap, Inc.*, 25 Cal. 4th 387, 396 n.7 (2001).

Section 3344.1's exemptions must be construed consistent with *Guglielmi*'s holding, which makes clear that The Greatest segment – which combines elements of both fiction (scenes played by actors) and non-fiction (newsreel footage and editorial narration) to depict the lives of many "public and prominent persons" – is well within the type of "public affairs" programming that the statute excludes.

### 5.   Count II's Claim for Damages Must Also Be Struck Because MAE Failed to Timely Register Ali's Alleged Publicity Rights

Finally, even if the plain language of Section 3344.1's exemptions did not bar Count II, MAE is still precluded from seeking any damages pursuant to that cause of action because it failed

DAVIS WRIGHT TREMAINE LLP

to follow the statute's requirement to timely register its purported publicity rights.  Section 3344.1

provides that any successor-in-interest to a deceased personality's publicity rights may register the

claim with the Secretary of State.  Cal. Civ. Code § 3344.1(f)(2).  Until registration occurs, a

successor "shall not recover damages for a use prohibited by this section that occurs before the

successor in interest or licensee registers a claim of the rights under paragraph (2)." *Id.* §

3344.1(f)(1).  MAE registered its claim to Ali's rights on October 20, 2017, more than eight

months after Super Bowl LI. RJN Ex. A. MAE is thus barred from seeking any damages allegedly

arising out of that broadcast, and so its prayer for damages must be struck.

      **6.**      **The First Amendment and the Copyright Act Also Bar Count II**

In addition, for the reasons stated in Fox's Rule 12(c) motion, and incorporated by

reference herein, MAE's right of publicity claim is also independently barred by the First

Amendment, and/or is preempted by federal copyright law.  Those grounds likewise require that

this anti-SLAPP motion be granted.

                **IV.**    **CONCLUSION**

For the reasons stated herein, Fox respectfully requests that this Court strike Count II of

Plaintiff's Complaint, and award Fox its reasonable fees and costs.


DATED this 16th day of January, 2018        Respectfully submitted,

                                      DAVIS WRIGHT TREMAINE LLP


                                      By:   */s/ Nathan Siegel*          
                                              Nathan Siegel

                                      Attorneys for Fox Broadcasting Company

DAVIS WRIGHT TREMAINE LLP

DEFENDANT'S SPECIAL MOTION TO STRIKE
Case No. 4:17-cv-06949-DMR